Dick A. Semerdjian (SBN 123630)
Owen M. Praskievicz (SBN 292439)
SCHWARTZ SEMERDJIAN CAULEY & MOOT LLP
101 W. Broadway, Suite 810
San Diego, California 92101
Telephone: (619) 236-8821
Facsimile: (619) 236-8827
Attorneys for Plaintiff Daniel Schreiber, individually and as Trustee of the Schreiber Living Trust

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

DANIEL J. SCHREIBER, individually and as Trustee of the SCHREIBER LIVING TRUST, a California trust,

Plaintiff,

v.

REDHAWK HOLDINGS CORP. fka Independence Energy Corp., a Nevada corporation; THOMAS J. CONCANNON, an individual; G. DARCY KLUG, an individual; FELIX C. SPIZALE, an individual; PHILLIP HARRIS IV, an individual; ANDRE F. TOCE, SR., an individual, ROBERT RHUNE, JR., an individual; and KAV HUNDLE, an individual,

Defendants.

Case No. '17CV0824 WQHBLM

**COMPLAINT FOR:**

**(1) VIOLATION OF UCC § 8-401 AND EQUIVALENT STATE LAW;**
**(2) BREACH OF FIDUCIARY DUTY;**
**(3) NEGLIGENCE;**
**(4) UNFAIR BUSINESS PRACTICES**

**DEMAND FOR JURY TRIAL**

Plaintiff DANIEL J. SCHREIBER, individually and as Trustee of the SCHREIBER LIVING TRUST ("Plaintiff"), for his claim for relief against Defendants REDHAWK HOLDINGS CORP. fka Independence Energy Corp., a Nevada corporation ("RedHawk"); THOMAS J. CONCANNON, an individual; G. DARCY KLUG, an individual, FELIX C. SPIZALE, an individual; PHILLIP HARRIS IV, an individual; ANDRE F. TOCE, SR., an individual, ROBERT RHUNE, JR., an individual; and KAV HUNDLE, an individual ("Defendants"), alleges as follows:

## I. NATURE OF ACTION AND RELIEF SOUGHT

1. DANIEL J. SCHREIBER ("Schreiber") is a former Director and Chief Executive Officer of RedHawk, a publicly traded company under the symbol IDNG. The SCHREIBER LIVING TRUST (the "Trust") is the owner of common shares in RedHawk. Schreiber is the Trustee of the Trust.

2. Since on or around September 28, 2016, RedHawk, by and through its officers and Board of Directors, has sought to obstruct the Trust's sale of its shares in RedHawk. As detailed below, these efforts included an unfounded demand to RedHawk's transfer agent to prohibit sales of Plaintiff's stock, delays in filing required SEC forms and, more recently, the termination of RedHawk's transfer agent. These intentional actions have prohibited Schreiber from selling and transferring his shares.

3. Under Article 8, section 8-401(a) of the Uniform Commercial Code (UCC), adopted in Nevada,[1] issuers of securities like RedHawk owe a duty to register a requested securities transfer on the issuer's books once certain statutory conditions are met. A request to remove a restrictive legend is considered to be the equivalent of a request to register a transfer of security, and thus Defendants' actions violate the UCC. If an issuer is under a duty to register a transfer and fails or refuses to do so, or unreasonably delays in registering the transfer, then the issuer is liable, under Section 8-401(b) of the UCC, for a stockholder's resulting damages.

4. Thus, Plaintiff has been individually harmed under the UCC and bring forth this direct action against Defendants for all damages described herein.

## II. JURISDICTION AND VENUE

5. This Court has original jurisdiction of this matter pursuant to 28 U.S.C. § 1332, in that the parties reside in different states and that the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. This Court

[1] *See* Nevada Revised Statutes 104.8401. As a Nevada corporation, it is indisputable that RedHawk has availed itself of Nevada law

has related claim jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6. This Court has jurisdiction and venue over Defendants pursuant to 28 U.S.C. § 1391(b) (2) as Plaintiff resides in the Southern District of California and a substantial part of the events giving rise to Plaintiff's claims against Defendants occurred or were intended to cause damage to Plaintiff in the Southern District of California.

## III. PARTIES

7. Schreiber is an individual residing in San Diego, California.

8. The Trust is a trust duly organized under the laws of the State of California. Schreiber is the Trustee of the Trust.

9. Plaintiff is informed and believes, and on that basis alleges, that Defendant RedHawk is a Nevada corporation with its principal place of business in Louisiana and doing business throughout the United States, including California.

10. Plaintiff is informed and believes, and on that basis alleges, THOMAS J. CONCANNON ("Concannon") is an individual residing in New Jersey. Concannon is the Chief Executive Officer and a Director on the Board of RedHawk.

11. Plaintiff is informed and believes, and on that basis alleges, G. DARCY KLUG ("Klug") is an individual residing in Louisiana. Klug is the Chief Financial Officer and Chairman of the Board of Directors for RedHawk.

12. Plaintiff is informed and believes, and on that basis alleges, FELIX C. SPIZALE ("Spizale") is an individual residing in Louisiana. Spizale is a Director on the Board of RedHawk.

13. Plaintiff is informed and believes, and on that basis alleges, PHILLIP HARRIS IV ("Harris") is an individual residing in Louisiana. Harris is a Director on the Board of RedHawk.

14. Plaintiff is informed and believes, and on that basis alleges, ANDRE F. TOCE, SR ("Toce") is an individual residing in Louisiana. Toce is a Director on the Board of RedHawk.

15. Plaintiff is informed and believes, and on that basis alleges, ROBERT RHUNE, JR ("Rhune") is an individual residing in Louisiana. Rhune is a Director on the Board of RedHawk.

16. Plaintiff is informed and believes, and on that basis alleges, KAV HUNDLE ("Hundle") is an individual residing in Birmingham, England. Hundle is a Director on the Board of RedHawk.

17. Collectively, Concannon, Klug, Spizale, Harris, Toce, Rhune, and Hundle are referred to herein as the Board of Directors.

## IV. COMMON ALLEGATIONS FOR ALL CLAIMS

18. Schreiber was appointed as a Director to RedHawk's Board of Directors on March 31, 2014. Schreiber was also the CEO of RedHawk from February 27, 2015.

19. In a sale and purchase transaction dated March 31, 2014, the Trust was issued 57,064,608 shares of restricted RedHawk stock. The shares were issued to the Trust for Schreiber's benefit.

20. Due to a strained personal and business relationship between Klug and Schreiber, Klug led the charge for Schreiber's ouster from RedHawk . Schreiber was removed from the Board of Directors on April 20, 2016, and resigned as CEO on July 5, 2016.

21. Commencing in or about April, 2016, Klug demanded Schreiber sell him personally all of his outstanding shares of RedHawk stock at a steep discount to the current market price; threatening to sue him in the name of RedHawk if he did not comply.

22. Despite Klug's demands, Schreiber refused to sell Klug any of his RedHawk stock.

23. After Schreiber was removed from his officer and director roles with RedHawk, Schreiber sought to cut all ties with the company and began selling the Trust's restricted shares of RedHawk.

24. Accordingly, the Trust sought to sell its restricted stock to the public under the registration exemption provisions of the Security and Exchange Commission ("SEC") Rule 144 (17 C.F.R. § 230.144 (2007), "Rule 144"). The general conditions of Rule 144 include a holding period of at least one year; compliance by the issuer (RedHawk) with periodic reporting requirements of the securities laws; volume restrictions; the handling of sales as routine trading transactions; and filing notice with the SEC. These restrictions limit Plaintiff to selling one percent (1%) of the total outstanding RedHawk shares every 90 days, which as of December 31, 2016, totaled 361,049,027 shares; i.e. Plaintiff can sell approximately 3.6 million shares every 90 days.

25. Between September 2016 and January 19, 2017, Plaintiff sold 3,120,000 shares of RedHawk pursuant to the Rule 144 requirements, reducing the Trust's ownership to 53,944,608 shares. Due to RedHawk missing multiple SEC filing requirements, Plaintiff's subsequent sales were delayed and the Trust has been damaged.

26. On or about January 25, 2017, Plaintiff requested that RedHawk's transfer agent, Continental Stock Transfer & Trust Company ("Continental"), remove the restrictive legend on an additional 1,500,000 of the Trust's shares. Plaintiff's request was accompanied by an opinion letter dated January 9, 2017, outlining the Trust's compliance with all requirements under Rule 144, as well as other documents necessary for the transfer of shares, including an irrevocable stock power signed Schreiber. The Rule 144 opinion letter relied upon RedHawk's latest SEC Form 10-Q filing, meaning that the letter was only valid until the company filed its next quarterly 10-Q. Thus, the letter provided that any shares not sold by February 15, 2017, were to be returned to restricted classification.

27. On January 31, 2017, the CFO of RedHawk, Klug, sent a letter requesting that Continental "not permit or otherwise facilitate the transfer" of RedHawk shares. Klug's letter did not specify what grounds he was relying upon to

refuse the removal of the legend from Trust's shares. Klug's letter did, however, reference a lawsuit by RedHawk and another entity, Beechwood Properties, LLC ("Beechwood"), filed against Plaintiff in the United States District Court for the for the Eastern District of Louisiana, Case No. 2:17-cv-00819.

28. On information and belief, Beechwood is owned by Klug.

29. Klug's letter was dated the same day the lawsuit was filed. As a result of Klug's letter, the restrictive legend on the Trust's shares was not removed.

30. On or about February 13, 2017, counsel for the Trust notified Continental and RedHawk that their refusal to remove the legend and transfer the Trust's shares violated UCC section 8-401(a)'s duty for issuers to register a transfer.

31. Soon thereafter, on February 15, 2017, Continental notified Plaintiff's counsel that Continental had received the issuer's written consent to proceed with the requested sale transfer of 1,500,000.

32. Because the Rule 144 opinion letter extended only until February 15, 2017, however, the transfer could not be completed by that same day and Continental requested a subsequent letter be issued.

33. As mentioned above, a Rule 144 opinion letter relies upon a company's latest SEC Form 10-Q filing, which is reported quarterly. In order for Plaintiff to receive an updated Rule 144 opinion letter then, he needed to wait until RedHawk filed its Form 10-Q.

34. RedHawk's Form 10-Q was originally due February 15, 2017, but RedHawk instead filed a Form NT 10-Q, stating that it intended to file its Form 10-Q within five days.

35. RedHawk did not file its updated 10-Q, however, until March 13, 2017, nearly a month late. Only then could Plaintiff receive an updated Rule 144 opinion letter and proceed with the request to remove the restrictive legend.

36. After RedHawk's intentional delays, when Plaintiff was finally able to again request that the restrictive legend on the Trust's shares be removed in March

2017, RedHawk *again* delayed Plaintiff's sale by secretly terminating its relationship with its transfer agent.

37. On April 6, 2017, Continental informed Plaintiff's broker it was "not currently servicing" RedHawk as a transfer agent as its services had been "suspended" by RedHawk.

38. On information and belief, pursuant to SEC rules, Continental notified the Depository Trust Company of its termination on April 7, 2017.

39. Conversely, RedHawk did not notify the public that it was now operating without a transfer agent.

40. Such notice should be disclosed in a SEC Form 8-K because it is a material change from the information provided in RedHawk's latest Form 10-K, which had stated that: "Our common shares are issued in registered form. Continental Stock Transfer & Trust Company (telephone number 212-509-4000) is the registrar and transfer agent for our common shares."

41. Accordingly, RedHawk mislead the investing public by its failure to file a Form 8-K regarding this material change.

42. On April 13, 2017, counsel for Plaintiff demanded a response from RedHawk regarding its transfer agent situation. As of the date of filing this complaint, RedHawk has not responded.

43. To-date, Plaintiff has been unable to transfer the Trust's shares in RedHawk and has been damaged as a result. Specifically, Defendants' actions have prohibited Plaintiff from selling his 3.6 million shares every 90 days since September 2016. But for Defendants' actions, Plaintiff would have been able to make at least two additional sales of 3.6 million shares in December 2016 and March 2017. Thus, *at a minimum*, Defendants' actions have caused Plaintiff to miss sales of at least 7.2 million shares. From September 2016 through the date of this complaint, RedHawk shares have traded between one and two cents, meaning that Defendants' actions have caused Plaintiff to lose sales between $72,000 and

$144,000. Further, Defendants' actions have devalued all of Plaintiff's outstanding 53,944,608 shares by delaying or preventing their future sale at the earliest possible date. Plaintiff continues to be damaged daily by the lost value the shares he has been unable to sell. At a minimum, Plaintiff has been damaged more than $75,000.

44. Plaintiff's inability to transfer shares has been a direct result of the actions by Klug, RedHawk and its Board of Directors. Plaintiff is informed and believes that Klug and the Board of Directors, in their collective and individual capacities, have acted to harm Plaintiff and prevent the Trust's transfer of shares. Thus Defendants' are liable for the Plaintiff's lost sales and devaluation of the Trust's shares.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR VIOLATION OF UCC § 8-401

### (AGAINST REDHAWK)

45. The allegations of paragraphs 1 through 44 above are repeated and realleged as though set forth fully herein.

46. UCC section 8-401(a) provides that if a certificated security in registered form is presented to an issuer with a request to register transfer or an instruction is presented to an issuer with a request to register transfer of an uncertificated security, the issuer *shall* register the transfer as requested if:

a. under the terms of the security the person seeking registration of transfer is eligible to have the security registered in its name;

b. the endorsement or instruction is made by the appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;

c. reasonable assurance is given that the endorsement or instruction is genuine and authorized (Section 8-402);

d. any applicable law relating to the collection of taxes has been complied with;

e. the transfer does not violate any restriction on transfer imposed by the issuer in accordance with Section 8-204;

f. a demand that the issuer not register transfer has not become effective under Section 8-403, or the issuer has complied with Section 8-403(b) but no legal process [e.g., an injunction] or indemnity bond is obtained as provided in Section 8-403(d); and

g. the transfer is in fact rightful or is to a protected purchaser.

47. Nevada, the state in which RedHawk is incorporated, has adopted Article 8 of the UCC and section 8-401. *See* Nevada Revised Statutes 104.8401 and California Commercial Code § 8401.

48. If an issuer is under a duty to register a transfer and fails or refuses to do so, or unreasonably delays in registering the transfer, then the issuer is liable, under Section 8-401(b) of the UCC, for a stockholder's resulting damages.

49. RedHawk is an issuer of stock that is required to comply with the provisions of Section 8-401 of the UCC and its state law equivalent.

50. The Trust has complied with all necessary conditions outlined in Section 8-401, including compliance with SEC Rule 144. These documents were provided to RedHawk's transfer agent, Continental, and can be provided at trial.

51. At various times between January 2017 and the filing of this complaint, the Trust requested that RedHawk's transfer agent remove the restrictive covenant from 1,500,000 of its shares.

52. Due to Klug and RedHawk's actions, the Trust's shares have not been transferred. Specifically, Klug's correspondence to Continental on January 31, 2017, unreasonably delayed the Trust's transfer of shares in January and February 2017. Thereafter, Klug and RedHawk intentionally filed their Form 10-Q one month late which prevented Plaintiff from receiving an updated Rule 144 opinion letter. Then, in April 2017, RedHawk's termination of Continental as its transfer agent left RedHawk without a transfer agent to complete transfers of stock.

53. Accordingly, Klug and RedHawk have intentionally failed to comply with its duty to register the Trust's requested transfer and is liable under Section 8-401(b) of the UCC for the Trust's resulting damages.

54. Plaintiff's damages will be shown according to proof at trial and will include Plaintiff's the full value of Plaintiff's shares, which he has been prevented from selling as a result of Defendants' actions. Because of the volume restrictions on Plaintiff's sale of RedHawk stock, a single lost sale impacts Plaintiff's sale of all shares because the shares are not worth anything if they cannot be sold.

**SECOND CLAIM FOR BREACH OF FIDUCIARY DUTY**

**(AGAINST ALL DEFENDANTS)**

55. The allegations of Paragraphs 1 through 54 above are repeated and realleged as though set forth fully herein.

56. Under the common law of both California and Nevada, a corporation and its officers and directors owe fiduciary duties to individual shareholders. Thus, Defendants, collectively and individually, owe fiduciary duties to the Trust as a shareholder of RedHawk and to Schreiber as an intended beneficiary of the Trust's shares.

57. Defendants violated their fiduciary duties to Plaintiff by not only failing to transfer the Trust's shares but by actively taking steps to prevent the transfer, including correspondence to RedHawk's former transfer agent, failing to file the 10-Q, the termination of its transfer agent, and the refusal to hire a new transfer agent in a timely fashion.

58. Plaintiff has been damaged directly as a result of Defendants' actions by the loss of the ability to sell or transfer shares from December 2016 until a date unknown, if ever. Plaintiff's damages will be shown according to proof at trial and will include the Plaintiff's lost sales, Plaintiff's loss of the time value of money in those sales, as well as any decline in the RedHawk stock price.

///

**THIRD CLAIM FOR NEGLIGENCE**

**(AGAINST ALL DEFENDANTS)**

59. The allegations of Paragraphs 1 through 58 above are repeated and realleged as though set forth fully herein.

60. Under the common law of both California and Nevada, a corporation and its officers and directors owe a duty of reasonable care to individual shareholders. Thus, Defendants, collectively and individually, owe this duty to the Trust as a shareholder of RedHawk and to Schreiber as an intended beneficiary of the Trust's shares.

61. Defendants violated their duty of reasonable care to Plaintiff by not only failing to transfer the Trust's shares but by actively taking steps to prevent the transfer, including correspondence to RedHawk's former transfer agent, filing its Form 10-Q late, the termination of its transfer agent, and the refusal to hire a new transfer agent in a timely fashion. Defendants' actions, at a minimum, were negligent.

62. Plaintiff has been damaged directly as a result of Defendants' actions by the loss of the ability to sell or transfer shares from December 2016 until a date unknown, if ever. Plaintiff's damages will be shown according to proof at trial and will include the Plaintiff's lost sales, Plaintiff's loss of the time value of money in those sales, as well as any decline in the RedHawk stock price.

**FOURTH CLAIM FOR UNFAIR BUSINESS PRACTICES**

**(AGAINST ALL DEFENDANTS)**

63. The allegations of Paragraphs 1 through 62 above are repeated and realleged as though set forth fully herein.

64. Nev. Rev. Stat. sections 598.0903 through 598.0999 generally prohibit deceptive trade practices for various actions, including: knowingly violating a state or federal statute or regulation relating to the sale or lease of goods or services (Section 598.0923.3); knowingly making any other false representation in a

transaction (Section 598.0915.15); and knowingly makes a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease (Section 598.0915.2).

65. All of Defendants' actions described herein were intentionally and knowingly done in order to prevent Plaintiff from selling the Trust's shares of RedHawk, including correspondence to RedHawk's former transfer agent, filing its Form 10-Q late, the termination of its transfer agent, and the refusal to hire a new transfer agent in a timely fashion.

66. Defendants' actions are part of ongoing concerted efforts aimed at preventing Plaintiff from selling shares from December 2016 until a date unknown, if ever. Plaintiff's damages will be shown according to proof at trial and will include the Plaintiff's lost sales, Plaintiff's loss of the time value of money in those sales, as well as any decline in the RedHawk stock price.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

## VI. PRAYER FOR JUDGMENT

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. That the Court issue an injunction requiring Defendants to take all necessary actions to effectuate the transfer of the Trust's shares, including but not limited to hiring a new transfer agent;

2. That Plaintiff be awarded damages for the loss of the time value of money from the date the first transfer was requested in January 2017, as well as for any decline in stock price between the date of the first transfer and when the sale eventually occurs, as applicable to all shares owned by the Trust.

3. That the Court award such other and further relief as it may deem just.

Dated: April 24, 2017

SCHWARTZ SEMERDJIAN
CAULEY & MOOT LLP

By: /s/ Dick A. Semerdjian
Dick A. Semerdjian, Esq.
Attorneys for Plaintiff s

## DEMAND FOR JURY TRIAL

DANIEL J. SCHREIBER, individually and as Trustee of the SCHREIBER LIVING TRUST, hereby demands trial by jury in this action.

Dated: April 24, 2017

SCHWARTZ SEMERDJIAN
CAULEY & MOOT LLP

By: /s/ Dick A. Semerdjian
Dick A. Semerdjian, Esq.
Attorneys for Plaintiff