FILED
JUN 23 2017
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL J. SCHREIBER, individually and as Trustee of the Schreiber Living Trust, a California trust,<br><br>Plaintiff,<br>v.<br>REDHAWK HOLDINGS CORP., a Nevada corporation formerly known as Independence Energy Corp.; et. al.,<br><br>Defendants. | CASE NO. 17cv824-WQH-BLM<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the Ex Parte Application for Temporary Restraining Order and Order to Show Cause RE: Preliminary Injunction (ECF No. 16) filed by Plaintiff Daniel Schreiber, individually and as Trustee of the Schreiber Living Trust ("Plaintiff") on June 22, 2017.

On April 24, 2017, Plaintiff initiated this action by filing the Complaint (ECF No. 1). On June 5, 2017, Plaintiff filed proof of summons returned executed for Defendants Felix C. Spizale, Redhawk Holdings Corp., and Robert Rhune, Jr. (ECF Nos. 3, 5-6). On June 6, 2017, the parties filed a joint motion to extend time for all Defendants to answer. (ECF No. 7). The joint motion states that counsel for Defendants agreed to accept service for Defendant RedHawk and the remaining Defendants who had not yet been served in this matter. *Id.* at 2. On June 8, 2017, the Court granted the joint motion (ECF No. 8). On June 15, 2017, Plaintiff filed proof of

summons returned executed for Defendants Thomas J. Concannon, Phillip Harris IV, Kav Hundle, G. Darcy Klug, Redhawk Holdings Corp., and Andre F. Toce, Sr. (ECF Nos. 9-14).

On June 22, 2017, Plaintiff filed the Ex Parte Application for Temporary Restraining Order and Order to Show Cause RE: Preliminary Injunction (ECF No. 16). On June 22, 2017, Defendants RedHawk Holdings Corp., Thomas J. Concannon, G. Darcy Klug, Felix C. Spizale, Phillip Harris IV, Andre F. Toce, Sr., Robert Rhyne, Jr., and Kav Hundle ("Defendants") filed a preliminary opposition[1] to the Ex Parte Application for Temporary Restraining Order and Order to Show Cause RE: Preliminary Injunction (ECF No. 17).

## I. Allegations of the Complaint (ECF No. 1)

Plaintiff alleges that he "is a former Director and Chief Executive Officer of RedHawk, a publicly traded company[,]" and the Schreiber Living Trust "(the 'Trust') is the owner of common shares in RedHawk. Schreiber is the Trustee of the Trust." (ECF No. 1 at ¶ 1). "Since on or around September 28, 2016, RedHawk, by and through its officers and Board of Directors, has sought to obstruct the Trust's sale of its shares in RedHawk." *Id.* at ¶ 2. "[T]hese efforts included an unfounded demand to RedHawk's transfer agent to prohibit sales of Plaintiff's stock, delays in filing required SEC forms and, more recently, the termination of RedHawk's transfer agent." *Id.*

"Schreiber was appointed as a Director to RedHawk's Board of Directors on March 31, 2014. Schreiber was also the CEO of RedHawk from February 27, 2015." *Id.* at ¶ 18. "In a sale and purchase transaction dated March 31, 2014, the Trust was issued 57,064,608 shares of restricted RedHawk stock." *Id.* at ¶ 19. "Due to a strained personal and business relationship between Klug and Schreiber . . . Schreiber was removed from the Board of Directors on April 20, 2016, and resigned as CEO on July

---

[1] Defendants title this pleading a "Preliminary Opposition" because it "is based solely on by [sic] Plaintiff's counsel oral description of the nature of the application. Defendants did not receive or review any of Plaintiff's papers in advance of their preparation of this preliminary opposition." (ECF No. 17 at 2 n.1).

5, 2016." *Id.* at ¶ 20. "After Schreiber was removed from his officer and director roles with RedHawk, Schreiber sought to cut all ties with the company and began selling the Trust's restricted shares of RedHawk." *Id.* at ¶ 23.

"[T]he Trust sought to sell its restricted stock to the public under the registration exemption provisions of the Security and Exchange Commission ('SEC') Rule 144[.]" *Id.* at ¶ 24. "The general conditions of Rule 144 . . . limit Plaintiff to selling one percent (1%) of the total outstanding RedHawk shares every 90 days, which as of December 31, 2016, totaled 361,049,027 shares; i.e. Plaintiff can sell approximately 3.6 million shares every 90 days." *Id.* "Between September 2016 and January 19, 2017, Plaintiff sold 3,120,000 shares of RedHawk pursuant to the Rule 144 requirements . . . [d]ue to RedHawk missing multiple SEC filing requirements, Plaintiff's subsequent sales were delayed and the Trust has been damaged." *Id.* at ¶ 25.

"On or about January 25, 2017, Plaintiff requested that RedHawk's transfer agent, Continental Stock Transfer & Trust Company ('Continental'), remove the restrictive legend on an additional 1,500,000 of the Trust's shares." *Id.* at ¶ 26. Plaintiff alleges that "[o]n January 31, 2017, the CFO of RedHawk, Klug, sent a letter requesting that Continental 'not permit or otherwise facilitate the transfer' of RedHawk shares" and "reference[d] a lawsuit by RedHawk and another entity . . . filed against Plaintiff in the United States District Court for the for the Eastern District of Louisiana[.]" *Id.* at ¶ 27. "[O]n February 15, 2017, Continental notified Plaintiff's counsel that Continental had received the issuer's written consent to proceed with the requested sale transfer of 1,500,000. Because the Rule 144 opinion letter extended only until February 15, 2017, however, the transfer could not be completed by that same day and Continental requested a subsequent letter be issued." *Id.* at ¶¶ 31-32. "In order for Plaintiff to receive an updated Rule 144 opinion letter then, he needed to wait until RedHawk filed its Form 10-Q. . . . RedHawk did not file its updated 10-Q, however, until March 13, 2017, nearly a month late." *Id.* at ¶¶ 33, 35.

"After RedHawk's intentional delays, when Plaintiff was finally able to again

request that the restrictive legend on the Trust's shares be removed in March 2017, RedHawk *again* delayed Plaintiff's sale by secretly terminating its relationship with its transfer agent." *Id.* at ¶ 36. "On April 6, 2017, Continental informed Plaintiff's broker it was 'not currently servicing' RedHawk as a transfer agent as its services had been "suspended" by RedHawk. . . . RedHawk did not notify the public that it was now operating without a transfer agent. . . . Accordingly, RedHawk mislead the investing public by its failure to file a Form 8-K regarding this material change." *Id.* at ¶¶ 37, 39, 41.

"On April 13, 2017, counsel for Plaintiff demanded a response from RedHawk regarding its transfer agent situation. As of the date of filing this complaint, RedHawk has not responded." *Id.* at ¶ 42. "To-date, Plaintiff has been unable to transfer the Trust's shares in RedHawk and has been damaged as a result." *Id.* at ¶ 43. "[*A*]*t a minimum*, Defendants' actions have caused Plaintiff to miss sales of at least 7.2 million shares. From September 2016 through the date of this complaint, RedHawk shares have traded between one and two cents, meaning that Defendants' actions have caused Plaintiff to lose sales between $72,000 and $144,000. Further, Defendants' actions have devalued all of Plaintiff's outstanding 53,944,608 shares by delaying or preventing their future sale at the earliest possible date." *Id.* at ¶ 43.

## II. Ex Parte Application for Temporary Restraining Order and Order to Show Cause RE: Preliminary Injunction (ECF No. 16)

Plaintiff requests the Court issue an order restraining Defendant RedHawk "from blocking the transfer of Plaintiff's common shares of RedHawk" and allowing Plaintiff "to sell his shares to interested third-parties." (ECF No. 16 at 2). Plaintiff contends that it continues to suffer harm as the price of RedHawk's stock has declined in value and Plaintiff's opportunity to sell his shares "become scarcer." (ECF No. 16-1 at 4). Plaintiff contends that on June 14, 2017, "RedHawk filed its Form 10-Q Quarterly Report with the [SEC]" which demonstrates "a substantial decrease in the company's current and total assets since 2016[,] a net decrease in the company's cash[,]" and that

RedHawk intends to sell two real estate assets in 2017. *Id.* at 5. Plaintiff further contends that "RedHawk's CFO [Defendant Klug] recently made clear that RedHawk's refusal to transfer Plaintiff's shares has nothing to do with any legal objection to the transfer, but is instead contingent upon a 'global resolution' of disputed claims between the parties." *Id.*

Plaintiff contends that "[w]ithout an injunction preventing RedHawk from further interfering with Plaintiff's right to sell his shares, Plaintiff will be harmed irreparably because RedHawk has explicitly made clear its intention to block Plaintiff's transfer of shares while simultaneously selling off the company's assets, leaving Plaintiff with no remedy if and when he prevails at trial in this matter." *Id.* at 6. Plaintiff contends that "[f]ormal notice is not necessary in this case due to the impending harm Plaintiff will suffer if there is any delay." (ECF No. 16 at 2).

In their preliminary opposition, Defendants contend that Plaintiff's request for injunctive relief improperly seeks to change the status quo of this action. Defendants contend that Plaintiff cannot demonstrate an irreparable injury or a non-monetary injury. (ECF No. 17 at 3). Defendants contend that Plaintiff has not demonstrated a substantial likelihood of success on the merits in this action, because Plaintiff is being sued in another action for failing to disclose a material fact at the time when Plaintiff "obtained shares of stock from RedHawk" that are at issue in this action. *Id.* Defendants further request the opportunity "to file a substantive opposition before any ruling is issued" on Plaintiff's Application, "unless the Court is inclined to summarily deny Plaintiff's [A]pplication[.]" *Id.* at 2.

**III. Analysis**

**A. Temporary Restraining Order**

Rule 65(b)(1) of the Federal Rules of Civil Procedure states that

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). The Supreme Court has explained that "The stringent restrictions imposed by . . . Rule 65, on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 438-39 (1974). "Consistent with this overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO. For example, an ex parte TRO may be appropriate where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (citation and quotation marks omitted).

In this case, Plaintiff has attached a declaration from its attorney stating that he informed Defendants' attorney by telephone on June 21, 2017 and by email on June 22, 2017 that Plaintiff "would be immediately proceeding via an ex parte application for a temporary restraining order and an order to show cause why a preliminary injunction should not be issued." (ECF No. 16-3 at 2; Praskievicz Decl. at ¶ 3). Defendants confirm that Plaintiff's attorney made efforts to provide Defendants with notice of the Application. *See* ECF No. 17 at 2 n.1. The Court concludes that Plaintiff has satisfied the notice requirement of Rule 65(b)(1)(B).

However, Plaintiff has not set forth "specific facts" that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]" Fed. R. Civ. P. 65(b)(1)(A).[2] Plaintiff has

---

[2] In this case, Defendants filed a preliminary opposition to Plaintiff's Application (ECF No. 17) that Defendants contend was prepared before Defendants had a chance to review the Application. The Court concludes that Defendants have not been given

- 6 -

17cv824-WQH-BLM

1  failed to set forth specific facts as to why the Court should grant Plaintiff the injunctive
2  relief that it requests "before reasonable notice and an opportunity to be heard has been
3  granted both sides of a dispute." *Granny Goose*, 415 U.S. at 439. *See Zakar v. CHL
4  Mortg. Pass Through Trust*, No. 11CV457 JLS (WVG), 2011 WL 915293, at *2 (S.D.
5  Cal. Mar. 8, 2011) (Sammartino, J.) (denying the plaintiffs' application for a temporary
6  restraining order because the plaintiffs "failed to set forth specific facts in an affidavit
7  or a verified complaint clearly showing that immediate and irreparable loss would
8  result before the Defendants could be heard in opposition."). Because Plaintiff has
9  failed to meet the requirement set forth in Rule 65(b)(1)(A), Plaintiff's Application for
10 a Temporary Restraining Order is DENIED.

**B. Preliminary Injunction**

Plaintiff's Application also includes a request for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a). *See* ECF No. 16-1 at 6 ("Plaintiff requests this Court immediately enter a restraining order and preliminary injunction prohibiting RedHawk from further blocking Plaintiff's requested transfer of shares."). Rule 65(a) states that "The court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). Plaintiff has demonstrated that Defendants received notice of the Application. *See* ECF No. 16 at 4; 16-1 at 17; 16-2 at 66; 16-3 at 6. Accordingly, Plaintiff's request for a preliminary injunction will be set for a hearing on August 3, 2017 at 2:00 PM in Courtroom 14B. Any formal opposition by Defendants must be filed no later than July 17, 2017. Any reply by Plaintiff must be filed no later than July 24, 2017.

DATE: 6/23/17

WILLIAM Q. HAYES
United States District Judge

---

the full opportunity to be heard in opposition to Plaintiff's Application. Therefore, the Court treats Plaintiff's Application as an ex parte request for a temporary restraining order.